IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CHRISTOPHER MARK CARRIER                                                          PLAINTIFF

v.                        Civil No. 5:23-cv-05133-TLB-MEF

FLINT JUNOD, Chief Executive Officer of
Turn Key Health Clinics, LLC; HEAD NURSE
TRACEY ROBISON, Turn Key Health Clinics,
LLC; SHERIFF SHAWN HOLLOWAY, Benton
County, Arkansas; and SAM HALL, Public
Defender, Benton County                                                          DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Christoper M. Carrier ("Carrier"), currently an inmate of the Benton County Detention Center ("BCDC"), filed this *pro se* civil rights action under 42 U.S.C. § 1983. Carrier proceeds *pro se* and *in forma pauperis* ("IFP"). Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable Timothy L. Brooks, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

The case is before the Court for preservice screening of the Complaint (ECF No. 1) under 28 U.S.C. § 1915A. Pursuant to § 1915A, the Court has the obligation to screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

### I.  BACKGROUND

Carrier's first claim is against Nurse Robison, Sheriff Holloway, and Flint Junod. (ECF No. 1 at 4). On June 12, 2021, Plaintiff was transported from the Washington County Detention Center ("WCDC") to the BCDC. *Id.* He had COVID at the time of his transfer. *Id.* Carrier says Nurse Robison and the BCDC staff were notified of his diagnosis by both the WCDC medical

and detention staff and by Carrier himself.  *Id.*   Despite his diagnosis and his "previously known medical issues & compromised immune system," Carrier says he was placed in general population. *Id.* at 5.   Because he feared for his life, Carrier indicates he and his family posted a $27,500 bond. *Id.*   Carrier indicates they would not have posted the bond except for the fact they "found it to be an essential priority to preserve his vitality."  *Id.*

Carrier alleges this all occurred "under the care of Sheriff Shawn Holloway & Flint Junod of Turn[][K]ey Medical."   (ECF No. 1 at 5).   Carrier maintains his treatment deviated from "literally every aspect" of the policies and procedures that regulate the administration of health care under state and federal law resulting in the violation of his constitutional rights.  *Id.*   He further alleges that his treatment amounts to reckless criminal endangerment.  *Id.*

Carrier's second claim is against all four Defendants.   (ECF No. 1 at 6).   On August 22, 2022, Carrier says he was "sleeping above [a] fellow inmate diagnosed w/ MRSA."  *Id.*   At the time, Carrier was a trustee.  *Id.*   Carrier informed his wife who, in light of Carrier's "myriad of previously existing health concerns," began "persistently communicating" concerns regarding his health to the Defendants.  *Id.*   Defendants refused to work with Carrier's wife or acknowledge, due to HIPPA concerns, that the fellow inmate had MRSA.  *Id.*   Carrier alleges his health concerns were also communicated to his public defender, Sam Hall.

On August 31, 2022, Carrier says he was terminated as a trustee and placed in general population.  (ECF No. 1 at 6).   Carrier states that he was housed with four other inmates who were also diagnosed with MRSA.  *Id.*   On or about September 7, 2022, Carrier had "an ingrown hair/pimple" that became infected.  *Id.*   The infection caused a "gaping" open "laceration" on his leg.  *Id.*   His leg became so swollen he could hardly "fit into the facility provided stripes."  *Id.*

Carrier says Nurse Robison merely scoffed and argued the condition was not serious.  *Id.*

Carrier was prescribed antibiotics which "failed miserably."  (ECF No. 1 at 7).  Carrier was finally admitted to the hospital and diagnosed with an "advanced MRSA infection threatening life and limb."  *Id.*  Carrier remained in the hospital for four days and upon discharge was prescribed medication.  *Id.*  The prescribed medication was not provided to Carrier.  Instead, he was "given Tylenol and [I]buprofen to remedy post surgery pain and potential for reinfection."  *Id.*  Carrier spent thirty days in the medical pod but did not receive the prescribed physical therapy.  *Id.*

Carrier bonded out as quickly as possible due to "fear of life and limb."  (ECF No. 1 at 7).  Carrier ended up back in custody after he was charged with failure to appear.  *Id.*  Carrier alleges he did not appear for "court as a result of [the] aforementioned testimony/claims."  *Id.*  With respect to the Defendants, Carrier says: "All of this previously mentioned account was overseen by" Sheriff Holloway, Nurse Robison, and Flint Junod of Turn Key Medical.  *Id.*  Carrier indicates his official capacity claim is the same as stated in claim one.  *Id.* at 8.

As relief, Carrier seeks the following: surrendered bond replacement in the amount of $70,000; $1500 for each day he was incarcerated while medically suffering and for each day of the five-year sentence on the failure to appear charge—a total of $642,000; damages in the amount of $2.5 million due to reduced quality of life and/or diminished life span; $60,000 a year for approximately twenty years for residential medical care; punitive damages; and the resignation of all Defendants.  (ECF No. 1 at 10).

## II.   APPLICABLE STANDARD

The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are

frivolous, malicious, or fail to state a claim upon which relief may be granted, or (2) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action is malicious when the allegations are known to be false, or it is undertaken for the purpose of harassing or disparaging the named defendants rather than to vindicate a cognizable right. *In re Tyler*, 839 F.2d 1290, 1293-94 (8th Cir. 1988). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded ... to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). However, even a *pro se* Plaintiff must allege specific facts sufficient to support a claim. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

### III.  DISCUSSION

To state a claim under § 1983, a plaintiff must allege that the conduct of a defendant acting under color of state law deprived him of a right, privilege, or immunity secured by the United States Constitution or by federal law. 42 U.S.C. § 1983. Additionally, "[l]iability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *See, e.g., Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (cleaned up).

**A.   Sam Hall**

It is settled law that a public defender does not act under color of law for purposes of § 1983. *Polk Cty. v. Dodson,* 454 U.S. 312, 318 (1981). Defendant Sam Hall, a public defender,

4

may not be sued under § 1983. Further, even if Defendant Hall could be sued under § 1983 (which he clearly cannot), he had no personal involvement in, or direct responsibility for, the provision of medical care at the BCDC. Carrier has failed to state a plausible claim against Defendant Hall.

### B. Sheriff Holloway

An individual may be sued under § 1983 in both his individual and his official capacity. "Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself." *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (internal citations omitted).

In this case, Carrier has sued the Defendants in both their individual and official capacities. The first question, then, is whether Carrier has asserted a plausible individual capacity claim against Sheriff Holloway. "[A] general responsibility for supervising the operations of a [detention center] is insufficient to establish the personal involvement required to support liability." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). In other words, "[p]rison administrators cannot be held liable on a vicarious liability theory for the acts of their subordinates absent factual allegations of personal participation, direction, or acquiescence in those acts and omissions." *Walker v. Missouri Bd. of Prob. & Parole*, 586 F. Supp. 411, 413 (W.D. Mo. 1984). Carrier has alleged no facts suggesting any personal involvement on the part of Sheriff Holloway. Carrier has, therefore, failed to state a plausible individual capacity claim against Sheriff Holloway.

To establish an official capacity claim under § 1983, a "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the

governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). For his official capacity claim, Carrier has alleged the BCDC deviates from the policies and procedures regulating the administration of health care. He further alleges the degree of deviation teeters on the edge of criminal reckless. The Court must construe Carrier's allegations liberally and weigh all factual allegations in favor of Carrier. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (Court must liberally construe the facts unless they are clearly baseless—those that are fanciful, fantastic, and delusional). Liberally construing these allegations, the Court believes the facts are sufficient to allege a practice of providing substandard medical care to detainees and "deliberate indifference or tacit authorization of the offensive acts by failing to take remedial measures following notice of a pattern of such acts by his subordinates." *Wilson v. City of N. Little Rock*, 801 F.2d 316, 322 (8th Cir. 1986).

### C.   CEO Flint Junod

Carrier has failed to allege any facts suggesting personal participation, direction, or acquiescence in the acts or omissions on the part of Mr. Junod. Carrier has, therefore, failed to state a plausible individual capacity claim against Mr. Junod. As with Sheriff Holloway, while the official capacity claim may not withstand a summary judgment motion, the Court believes liberally construing the facts and any inferences therefrom that a plausible official capacity claim has been stated.

### D.   Nurse Robison

Carrier has clearly stated a plausible individual capacity claim against Nurse Robison. Any official capacity claim against her would be duplicative of the one asserted against Mr. Junod and will, therefore, be dismissed. *See e.g., Artis v. Francis Howell N. Band Booster Ass'n, Inc.*,

161 F.3d 1178, 1182, 1185 (8th Cir. 1998) (proper to dismiss as duplicative or redundant, claims against an official sued in his official capacity that are also asserted against the official's governmental employer).

## IV. CONCLUSION

For the reasons discussed above, pursuant to 28 U.S.C. § 1915A, it is recommended that that the following claims be dismissed for failure to state claims upon which relief may be granted:

- All claims against Public Defender Sam Hall;
- The individual capacity claims against Sheriff Holloway;
- The individual capacity claims against Flint Junod; and,
- The official capacity claims against Nurse Robison.

By separate Order the Court will direct service of the Complaint and this Report and Recommendation on Sheriff Holloway, Flint Junod, and Nurse Robison.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 28th day of August 2023.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE