IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

CHRISTOPHER MARK CARRIER                                    PLAINTIFF

v.                              Civil No. 5:23-cv-05133-TLB-MEF

HEAD NURSE TRACEY ROBISON,
Turn Key Health Clinics, LLC;
SHERIFF SHAWN HOLLOWAY,
Benton County, Arkansas;
BENTON COUNTY, AR; and
TURN KEY HEALTH CLINICS, LLC                               DEFENDANTS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This is a civil rights action filed under 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable Timothy L. Brooks, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. Currently before the Court are the Motion for Summary Judgment (ECF No. 78) filed by Defendants Turn Hey Health Clinics, LLC and Nurse Tracey Robison (collectively, "the Turn Key Defendants"), their Statement of Material Facts in Support (ECF No. 79) and Brief in Support (ECF No. 80), as well as the Turn Key Defendants' Motion to Deem their Joint Motion for Summary Judgment Confessed (ECF No. 95), and Plaintiff Christopher Mark Carrier's Response (ECF No. 98) in opposition to both of these Motions. Also before the Court are the Motion for Summary Judgment (ECF No. 81) filed by Defendants Sheriff Shawn Holloway and Benton County, Arkansas (collectively, "the Benton County Defendants"), their Brief in Support (ECF No. 82) and Statement of Undisputed Material Facts (ECF No. 83), Plaintiff's Response in Opposition (ECF No. 92) and Statement of Facts (ECF No. 93), and the Benton County

1

Defendants' Reply (ECF No. 94).  For the reasons given below, the undersigned recommends that both Motions for Summary Judgment be **GRANTED**.

## I.    BACKGROUND

Plaintiff's Second Amended Complaint (ECF No. 14) asserts four claims, all of which concern medical issues he experienced or medical treatment he received while incarcerated at the Benton County Detention Center ("BCDC") by Turn Key Health Clinics, LLC—a third-party contractor that provides all medical care at the BCDC.  His first claim alleges that on an unspecified date[1] he was transported from the Washington County Detention Center ("WCDC") to the BCDC after having tested positive for COVID-19, and that he was placed in the general population despite his diagnosis.  *See id.* at 4–6.  Plaintiff's second claim alleges that on several occasions in August 2022 he was housed with other inmates who had been diagnosed with MRSA; that in September 2022 he began exhibiting symptoms of MRSA infection, which worsened to a point which eventually required hospitalization; and that after his discharge from hospitalization he did not receive his prescribed medications or physical therapy.  *See id.* at 7–9.  His third claim essentially repeats the allegations in his second claim about not receiving his prescribed treatment post-hospitalization.  *See id.* at 9–10.  And Plaintiff's fourth claim alleges that his medical neglect was the result of a failure by Benton County to train its jail employees.  *See id.* at 11.  Thus, although Plaintiff's allegations are brought in four separate claims, there are essentially only two underlying

---

[1] Previous versions of Plaintiff's complaint characterize this transport as having occurred either on June 12, 2021, or June 10, 2021.  *See* ECF No. 1, p. 4; ECF No. 9, p. 1.  But claim 1 of Plaintiff's operative Second Amended Complaint only states that he was arrested and taken to WCDC on *August* 12, 2021, and that when he arrived there, he tested positive for COVID-19.  *See* ECF No. 14, p. 4.  The claim does not state when Plaintiff was transported from WCDC to BCDC.  At any rate, Plaintiff now does not dispute that in fact he was an inmate at BCDC from July 12, 2022, to October 19, 2022.  *Compare* ECF No. 83, ¶ 1 *with* ECF No. 92, p. 3.

events or series of events on which they are based: one concerns COVID-19 ("the COVID-19 allegations"), and the other concerns MRSA ("the MRSA allegations").

Plaintiff contends that Defendants violated his Eighth[2] Amendment right to be free from cruel and unusual punishment by exhibiting deliberate indifference to his medical needs. The Turn Key Defendants and the Benton County Defendants have separately moved for all claims against them to be dismissed with prejudice on summary judgment. *See* ECF Nos. 78, 81. Both Motions are now ripe for decision.

## II.    LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (citing *Anderson*

---

[2] Plaintiff's Second Amended Complaint cites both the Eighth and Fourteenth Amendments as the grounds for his deliberate indifference claims. The Eighth Amendment governs prisoners' claims of deliberate indifference to medical needs generally, but the Fourteenth Amendment governs such claims when they are brought by pretrial detainees. *See Perry v. Adams*, 993, F.3d 584, 587 (8th Cir. 2021). The same analytical standard applies to such claims regardless of which Amendment is properly invoked. *See Barton v. Taber*, 908 F.3d 1119, 1123–24 (8th Cir. 2018).

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.      ANALYSIS

To establish a constitutional violation based on deliberate indifference, a plaintiff must show that he suffered from an objectively serious medical need and that the defendant had actual knowledge of that need but deliberately disregarded it. *See Barton v. Taber*, 908 F.3d 1119, 1124 (8th Cir. 2018). "'Deliberate indifference' entails a level of culpability equal to the criminal law definition of recklessness, that is, a prison official 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Bender v. Regier*, 385 F.3d 1133, 1137 (8th Cir. 2004) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Mere negligence in diagnosis or treatment does not rise to the level of an Eighth Amendment violation, nor does an inmate's mere disagreement with the course of his medical treatment. *See id.*

The Court will deal first with the COVID-19 allegations and then turn to the MRSA allegations. The Benton County Defendants have produced an intake questionnaire that Plaintiff filled out upon his arrival at BCDC, in which Plaintiff denied having been tested for COVID-19 within the last month, having been quarantined within the last month, or having been in contact with anyone having COVID-19. *See* ECF No. 83-2, p. 1. Plaintiff has not disputed the authenticity of this document, nor has he produced any evidence that Defendants knew or should have known

that he had COVID-19 at the time he was transported to BCDC. Instead, confusingly, he simply insists that this document is unrelated to his case and asserts that he has "no claims regarding COVID-19 on the dates listed." *See* ECF No. 92, p. 3. It is unclear to the Court whether this means Plaintiff now wishes to abandon claim 1 of his Second Amended Complaint, but regardless, the undisputed evidence before the Court shows that Defendants had no basis for knowing or believing that Plaintiff had COVID-19 at the time he was transferred to BCDC. His claims regarding COVID-19 must, therefore, be dismissed with prejudice.

Turning to Plaintiff's MRSA allegations, the Turn Key Defendants have provided Plaintiff's medical records from his time at BCDC, totaling hundreds of pages. Those records contain a note from Nurse Crystal Hoover dated September 18, 2022, describing how that morning she saw Plaintiff limping and asked him about it, to which he responded, "I think I got bit by a spider or something." *See* ECF No. 78-1, p. 161. That note further states that she observed a "circular round area to outer front right knee with dark center" and "redness . . . around area," and that this same day "Dr[.] Saez [was] notified with order for Bactrim DS two times daily for 7 days." *See id.* Two days later, Plaintiff submitted a sick call request in which he wrote: "i need some cruches and something for [MRSA] and a cotton blanket please im hurtin real badd let me go to the hospital ive got medicade no cash." *See* ECF No. 78-2, p. 3. That same day, Nurse Lydia Adams obtained orders from Dr. Roberto Saez over the phone for Plaintiff's Bactrim to be discontinued and for him to start taking Augmentin twice daily for seven days instead. *See* 78-1, pp. 32, 55–56. Plaintiff took the first two doses of Augmentin that were offered to him, *see id.* at 56, but on the next day, September 21, he submitted a follow-up sick call request to his previous one, simply writing "nevermind," *see* ECF No. 78-2, p. 3. An hour and a half later, Nurse Heather Lovelady responded, writing "We do not give cotton blankets unless you have a PROVEN allergy

to wool. We changed your antibiotic yesterday to a very strong antibiotic. You will be rechecked by the nurse again today as well. We are also having you see the doctor on Friday [September 23]." *See* ECF No. 78-4, p. 8. Plaintiff's contemporaneous medical records indicate that he refused the next 6 doses of Augmentin that were offered to him. *See* ECF No. 78-1, p. 56.

Later that same day, September 21, 2022, Plaintiff submitted several medical grievances and sick call requests about his leg. *See* ECF No. 78-4, p. 8. Nurse Heather Lovelady saw Plaintiff that afternoon, as previously scheduled, and immediately notified Dr. Saez that Plaintiff's condition was worsening, and she arranged for Plaintiff to be transported to the hospital emergency room. *See* ECF No. 78-1, pp. 32–33. Plaintiff received inpatient treatment at Mercy Hospital Northwest Arkansas ("Mercy") from September 21 through September 24, 2022, when he was discharged back to BCDC. *See* ECF No. 78-3, p. 1. Mercy's discharge instructions required wound care to be performed on his surgical site every Monday, Wednesday, and Friday. *See id.* at 4. The discharge instructions also noted updated prescription medications, and two follow-up appointments with Julie L. Slavik, P.A. on September 28 and October 10, 2022. *See id.* at 1. Plaintiff's new prescriptions were ordered by Nurse Adams on the day of his discharge. *See* ECF No. 78-1, pp. 56–59. On September 27, 2022, however, Plaintiff filled out a Waiver of Treatment/Evaluation form electing to discontinue taking Tramadol for his pain, and to take Tylenol and Ibuprofen instead. *See* ECF No. 78-2, p. 88; ECF No. 78-1, p. 162.

Nurse Lovelady set wound-care appointments with Plaintiff for every Monday, Wednesday, and Friday, as instructed by Mercy, beginning on Monday September 26, 2022. *See id.* at 127. And Defendant Nurse Robison scheduled Plaintiff's post-operative appointments with P.A. Slavic, as instructed by Mercy, and arranged for his transport to both of those appointments. *See* ECF No. 78-5, ¶¶ 39, 44; ECF No. 78-2, pp. 10, 27; ECF No. 78-3, p. 26. Plaintiff attended

6

both appointments, *see* ECF No. 78-2, pp. 22, 47, and at the second one, P.A. Slavic recommended that Plaintiff receive physical therapy to improve the range of motion in his knee, *see id.* at 47.  On October 18, 2022, Plaintiff filled out a Waiver of Treatment/Evaluation form electing to discontinue his outpatient physical therapy because "leg has improved – ROM increasing."  *See* ECF No. 78-2, p. 28.  That same day, Plaintiff was relocated from the medical pod, where he had been housed since his hospital discharge, to the general population.  *See* ECF No. 78-1, p. 35.  Plaintiff was released from BCDC the next day.

Plaintiff has not provided any evidence disputing or undermining the accuracy of these medical records.  And what these records indisputably show is that at every step along the way, from when Plaintiff first informed Turn Key or BCDC staff of his leg infection, all the way up until his release from BCDC, Plaintiff received prompt and appropriate medical attention; that after his hospitalization Plaintiff was offered treatment in accordance with Mercy's discharge instructions; and that to the extent Plaintiff did not receive what was recommended by Mercy, it was because Plaintiff himself elected to refuse such treatment.  Plaintiff's medical needs regarding MRSA were obviously serious, but he has not met his burden of providing evidence from which a fact-finder could reasonably infer that any prison officials or Turn Key employees exhibited deliberate indifference to those medical needs.  Therefore, his claims regarding MRSA, like his claims regarding COVID-19, must be dismissed with prejudice, as he has not produced any evidence that a constitutional violation occurred.  And since all of Plaintiff's remaining claims against all remaining Defendants are for constitutional violations regarding either his COVID-19 allegations or his MRSA allegations, that means all of Plaintiff's claims in this matter must be dismissed with prejudice.

## IV.    CONCLUSION

For these reasons, it is RECOMMENDED that Defendants Turn Hey Health Clinics, LLC's and Nurse Tracey Robison's Motion for Summary Judgment (ECF No. 78) and Defendants Sheriff Shawn Holloway's and Benton County, Arkansas's Motion for Summary Judgment (ECF No. 81) both be **GRANTED**.

*Referral Status*: This case should not remain referred because all matters have been recommended for dismissal in this Report and Recommendation.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 19th day of November 2025.

/s/ *Mark E. Ford*
_____
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE